Stark LIGON, Executive Director, Committee on Professional
Conduct *v.* Michael Anthony PRICE,
Arkansas Bar ID Number 81133

02-1328 200 S.W.3d 417

Supreme Court of Arkansas
Opinion delivered December 16, 2004

[Rehearing denied January 20, 2005.]

*Stark Ligon,* for petitioner/appellee.

*Appellee,* pro se, for respondent/appellant.

BETTY C. DICKEY, Justice. This is an original action under the Arkansas Supreme Court Procedures Regulating Professional Conduct (Procedures). The Executive Director of the Arkansas Supreme Court Committee on Professional Conduct (Ligon) filed an action for disbarment against Michael Anthony Price, based on two specific complaints, that of: (1) Timothy Stallings, a former client; and, (2) Federal Judge Susan Weber Wright, involving Price's representation of Anthony J. Vance. After Committee Panel A voted to proceed with disbarment, this court appointed retired Circuit Judge, Jack L. Lessenberry, to sit as special judge pursuant to Procedure 13(A). Judge Lessenberry's findings of fact and conclusions of law, as well as his recommendation for sanction have been filed with this court pursuant to Procedure 13(D). We conclude that those findings of fact and conclusions of law are not clearly erroneous and accept Judge Lessenberry's report and the order is hereby issued.

The Committee served Price with a formal complaint, under Section 9 of the Procedures, alleging violations of the Model Rules of Professional Conduct (Model Rules), based on the complaints of Timothy Stallings and Federal Judge Susan Weber Wright. In addition to the two formal complaints, Panel A also had information of Price's previous disciplinary sanctions including complaints from Judge James Mixon, Cleotis Gatson, and David Scott Curtis. Finally, the panel had other information, including that of a loan Price fraudently obtained from Marsha Hampton. After hearing testimony and considering the evidence, Committee Panel A voted by a majority paper ballot to initiate disbarment proceedings.

This court then appointed Jack Lessenberry special judge, pursuant to Section 13(A) of the Procedures, and on April 3, 2003, he began a five-day hearing on the complaints. The judge first

addressed a file-marked letter, dated a day earlier, in which Price asked to take inactive status under Rule 25 of the Rules of Professional Conduct, saying he did not have the "capacity to defend myself in these proceedings." Judge Lessenberry denied his request, finding that Price had violated numerous Model Rules, and recommended his disbarment. The findings of fact, conclusions of law, and recommendation of sanction were then filed with this court, along with a transcript of the proceedings. Procedures, Section (D). The special judge's findings of fact are accepted by this court unless they are clearly erroneous. *Id.* This court imposes the appropriate sanction as warranted by the evidence. *Id.* There is no appeal from this court except as may be available under federal law. *Id.*

A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Neal v. Hollingsworth,* 338 Ark. 251, 992 S.W.2d 771 (1999). The court must view the evidence in a light most favorable to the respondent, resolving all inferences in favor of the respondent. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.* The purpose of disciplinary actions is to protect the public and the administration of justice from lawyers who have not discharged their professional duties to clients, the public, the legal system, and the legal profession. *Neal v. Hollingswoth, supra.* Applying the clearly erroneous standard of review mandated by the Procedures, we now consider Price's assertion that the special judge erred when he recommended disbarment.

### Stallings Complaint

The first complaint was that of Timothy Stallings, who testified that he was in the Arkansas Partnership Program at the State Hospital when he hired Price, on the recommendation of another patient, to help him move to a less-restrictive environment nearer his home in Hot Springs. Stallings' girlfriend, Summer Emley, sent Price $1,250 by Western Union on August 21, 2001, to get a doctor to testify at the hearing scheduled September 5, 2001. While Price attended the hearing, he brought no doctor, and, in fact, suggested that a public defender represent Stallings, which was done. After the hearing, Price said he would refund Emley's money, but failed to do so. Stallings did not hear from Price again until March 7, 2002, when Stallings called Price and

told him he no longer needed his services. Later, on April 17, 2002, Stallings received a letter from Price stating that he had located a doctor.

In this complaint, Price was alleged to have violated Model Rules 1.3, 1.4(a), 1.4(b), 1.15(a), 1.16(d), 3.2, 5.5(a), 7.3(a), 8.4(a), and 8.4(d). Judge Lessenberry found Price violated these rules with the exception of Model Rules 5.5(a) and 7.3(a).

Special Judge Lessenberry found that Price violated Rule 1.3, Diligence, which states:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

Price argues that he acted with reasonable diligence and promptness, that Stallings' cross-examination and Price's own direct testimony reveal that he made diligent inquires, but that he had no success obtaining a psychiatrist. Price admitted delay, but claims he tried to contact approximately sixty (60) psychiatrists during a six (6) month period in an effort to find a forensic psychiatrist to evaluate his Arkansas Partnership Program clients. There is, however, no evidence in the record showing Price actually employed a doctor to examine Stallings. If he did, it was after Stallings had released him as his attorney. Therefore, the judge did not err in finding that Price failed to act with reasonable diligence and promptness in representing his clients.

Rule 1.4(a), Communication, provides:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

Judge Lessenberry concluded Price violated this rule because "the record supports perhaps one visit of respondent [Price] with Stallings over a long period." The violation of Rule 1.4(a) is well-supported by the record, which indicates Price made no effort to contact Stallings between Price's brief non-appearance at the September 5, 2001 hearing, and Price's letter of April 17, 2002 letter saying he had located a doctor to evaluate Stallings. Under Model Rule 1.4(b):

> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Judge Lessenberry concluded that Stallings' "appeared to have a good grasp of what was going on and what he expected of [Price]." Because Price failed to explain the delay in finding a doctor, or any other matter to Stallings, he violated this rule.

Price admitted that he never had a trust account, so clearly, he violated Rule 1.15(a), Safekeeping of property, which provides in part:

> (a) All lawyers shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

> (1) Funds of a client shall be deposited and maintained in one or more identifiable trust accounts in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. The lawyer or law firm may not deposit funds belonging to the lawyer or law firm in any account designated as the trust account, other than the amount necessary to cover bank charges, or comply with the minimum balance required for the waiver of bank charges.

Price concedes that he did not have an IOLTA trust account, but that "he maintained [a] separated, segregated account into which he deposited unearned flat fees in the cases like Stallings." Again, Price never hired a doctor to evaluate Stallings and never refunded any of the money Emley paid for that purpose. Therefore, the judge's findings are not clearly erroneous.

Model Rule 1.16(d), Declining or terminating representation, states:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

Price violated Rule 1.16(d) in that once Stallings informed him that he no longer required his services, Price failed to refund the money that Emley paid him for a doctor to evaluate Stallings.

■ Model Rule 3.2, Expediting litigation, states that:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

Price failed to make any efforts to expedite the Stallings' matter. Price's failure to timely locate a doctor to evaluate Stallings is obviously not in the interest of Stallings, who wanted to be transferred to a less-restrictive facility closer to home.

■ Judge Lessenberry found no evidence to support the allegation that Price violated Rule 5.5(a), Unauthorized practice of law:

A lawyer shall not:

(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.

Ligon argues that the judge "must have overlooked page 11 of Exhibit 4-A. This is a trial exhibit of pleadings from the Judge Wright/Vance complaint, containing . . . an affidavit from the Supreme Court Clerk's office showing Mr. Price failed to pay his 2002 law license fee by the March 1 deadline. His law license went into administrative suspension status then and remained there until May 13, 2002, when he paid his 2002 license fee." Ligon points to the testimony of Beti Gunter and Timothy Stallings, who testified Price dealt with Stallings as late as March 7, 2002, or April 17, 2002. However, Ligon directs this court to an affidavit on file in the Judge Wright complaint, not the Stallings' complaint. Judge Lessenberry's finding that there was "no evidence to support the allegation of misconduct," is not clearly erroneous.[1]

■ The judge also found no evidence that Price violated Model Rule 7.3(a), Direct contact with prospective clients:

(a) A lawyer shall not solicit, by any form of direct contact, in-person or otherwise, professional employment from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.

---

[1] We note that Judge Lessenberry considered the evidence in each complaint separately.

The testimony of Stallings clearly indicated that he had heard of Price through Edward King, another resident at the Arkansas Partnership Program, not that Price had solicited Stallings as a client.

The judge found that, cumulatively, Price is guilty of violating Model Rule 8.4(a), Misconduct, which states:

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another.

Price argues that there is insufficient evidence that he either attempted to violate any of the Model Rules or induced anyone else to do so. We disagree. Finally, Model Rule 8.4(d) states that it is professional misconduct for a lawyer to:

> (d) engage in conduct that is prejudicial to the administration of justice.

Again, having been found to have violated other Model Rules, Price also becomes guilty of this violation.

### Judge Susan Weber Wright Complaint

The second complaint was that of Federal District Judge Susan Weber Wright, who testified she was assigned *Anthony J. Vance vs. St. Vincent Infirmary Medical Center*, in which Price represented Mr. Vance. St. Vincent filed a motion to compel responses to interrogatories and requests for production, but Price did not respond. The following is a chronology of events:

> April 17, 2002, Judge Wright granted a motion to compel and directed Price to respond, but Price filed no response;
>
> May 9, 2002, St. Vincent filed a motion to dismiss;
>
> May 31, 2002, St. Vincent filed a motion for summary judgment;
>
> June 5, 2002, Judge Wright denied the motion to dismiss without prejudice, giving Price until June 14, 2002, to respond to the motion to dismiss, and to timely respond to a motion for summary judgment;

June 17, 2002, Price told Judge Wright's secretary he had been ill and would file that day asking for more time to respond;

July 1, 2002, Judge Wright's law clerk telephoned Price, who assured her he would file something by July 2, 2002;

July 8, 2002, Judge Wright's law clerk called and left a message for Price;

July 9, 2002, Price returned the phone call, and again, promised to file something;

July 16, 2002, A show cause order was entered, giving Price ten (10) days to explain why he should not be removed as counsel;

July 19, 2002, Price signed for the certified mail containing the show cause order.

July 31, 2002, Judge Wright removed Price from the case and directed him to immediately provide Vance with a copy of the order, continued the trial to an unstated date, and stayed any action on the summary judgment motion until Vance obtained another attorney;

September 24, 2002, Judge Wright responded to an undated letter from Vance, indicating Price had telephoned him on September 19, 2002, informing him of the order;

December, 2002, Judge Wright received a letter from Vance requesting his case be dismissed because he did not have the money to hire another attorney; and,

December 19, 2002, Judge Wright entered a voluntary dismissal without prejudice.

Based on Judge Susan Weber Wright's complaint, Price was alleged to have violated Model Rules 1.1, 1.16(d), 3.2, 3.3(a), 3.4(c), 5.5(a), 8.4(c), and 8.4(d). Judge Lessenberry found that Price violated Model Rule 1.1:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

Price argues that the record is "replete with evidence that respondent had a general intention to comply with Judge Wright's orders but between bouts with hypertension and competing disciplinary activity, respondent simply dropped the ball in the Vance case." Price did not provide competent representation to Vance by repeatedly failing to file responsive pleadings.

 In Judge Wright's order of July 31, 2002, Price was removed as attorney and was directed to provide his client with a copy of the order by September 16, 2002, so that Vance would know of the matters pending, obtain other representation, or proceed *pro se.* Vance wrote Judge Wright a letter stating that Price had telephoned him on September 19, 2002, three days later than Judge Wright's July 31 order directed Price to do. Price clearly violated Rule 1.16(d), Declining or terminating representation, which states:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

 Further, Price did not make reasonable efforts to expedite the Vance case, nor did he respond to any orders or pleadings. Model Rule 3.2, Expediting litigation, states:

> A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

 Judge Lessenberry found that Price violated Model Rule 3.3(a)(1), Candor toward the tribunal, which provides:

> (a) A lawyer shall not knowingly:
>
> (1) make a false statement of material fact or law to a tribunal.

Price talked with a secretary in chambers and with Judge Wright's law clerk by telephone, giving repeated excuses for delay and promising that pleadings would be forthcoming, but he failed to file any. Price knowingly made false statements to Judge Wright's staff in June and July about filing pleadings.

■ The judge found that Price violated Model Rule 3.4(c), Fairness to opposing party and counsel, that a lawyer shall not:

> (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

Price contends that the record shows his diminished capacity to comply because of illness and personal hardships, but does not deny he failed to respond to discovery, to an order granting a motion to dismiss, to a summary judgment motion, and to a show cause order from the court. Price's claims of illness and personal hardship are not justification for his repeated failings to obey Judge Wright's order.

■ Model Rule 5.5(a), Unauthorized practice of law, states:

> A lawyer shall not:

> (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.

Denise Parks, by an affidavit states that Price failed to pay his 2002 law license fee by the March 1 deadline. Price's law license went into administrative suspension status and remained there until May 13, 2002, when he paid his 2002 license fee. During this time Price practiced law representing Mr. Vance.

■ Judge Lessenberry found that Price violated Model Rule 8.4(c) and (d), Misconduct, which provides a lawyer shall not:

> (c) engage in conduct involving dishonesty, fraud, deceit or mis-representation;

> (d) engage in conduct that is prejudicial to the administration of justice.

Judge Lessenberry did not err in finding Price's conduct in failing to file pleadings as deceitful or prejudicial to the administration of justice.

### Other Evidence

Judge Lessenberry was presented with evidence at the disbarment hearing that Price had violated other Model Rules that were not included in the petition for disbarment. In this appeal,

Price objects "to all the findings of Model Rules violations covered in pages 17 through 22 of the special judge's report," without specificity or authority to support Price's attempts to overturn the findings and conclusions.

Judge James Mixon testified that he conducted a bankruptcy hearing where Price failed to produce records as ordered. Judge Mixon believed Price had received funds from a bankrupt client and had failed to report such payment. Price lied to Judge Mixon, saying that that he had an attorney trust account when he did not. Judge Lessenberry found Price "violated Model Rules."

Cleotis Gatson filed a complaint against Price, and the Committee found Price guilty of violating Model Rules 1.3, 1.4(a), and 1.4(b), and imposing a reprimand and a fine of $750. Price violated 1.3, 1.4(a), 1.15(a), 1.16(d), 3.2, 8.4(a), and 8.4(c), in his representation of David Scott Curtis, who had been committed to the Arkansas Partnership Program. David Ray Curtis paid Price $600 to get his son a doctor to evaluate David Scott, in order to get his son moved closer to home. When Price was fired for failing to obtain a doctor's services, he failed to refund the money to the Curtis family.

Judge Lessenberry found that no violation of a Rule was alleged in the petition for disbarment regarding a personal loan Price obtained through Marsha Hampton. However, the judge found that Price's letter to Hampton contained such misstatements and omissions as to meet the essential elements of the crime of fraud by deception, and violated Model Rule 8.4(c). Finally, Judge Lessenberry found that Price had not complied with continuing legal educational requirements for two years, nor had he ever maintained an attorney trust account since entering private practice in 1999.

### Comparability and Proportionality

Price argues that because Judge Lessenberry's findings clearly lack the required comparability and proportionality analysis in determining the appropriate sanctions, this court should reject the recommendations. However, neither Price's abstract nor his addendum contain any mention of comparability or proportionality analysis. This court does not consider issues lacking citation of authority. *Cambiano v. Arkansas State Board of Law Examiners*, 357 Ark. 336, 167 S.W.3d 649 (2004); *Holcombe v. Marts*, 352 Ark. 201,

99 S.W.3d 401 (2003). Neither the petitioner nor this court is required to search the record to find where Price might have raised the issue at trial.

Judge Lessenberry effectively analyzed the thirty-five factors that lent themselves to consideration of comparability and proportionality. Section 17 of the Procedures divides violations of the Model Rules into two separate categories of misconduct: serious misconduct and lesser misconduct. Procedures 17(B) and (C). Serious misconduct warrants a sanction of terminating or restricting a lawyer's license to practice law, whereas the lesser misconduct does not. *Neal v. Hollingsworth*, 342 Ark. 566, 992 S.W.2d 771 (1999). Conduct will be considered serious misconduct if any of the following considerations set forth in Procedure Section 17(B) apply:

(1) The misconduct involves the misappropriation of funds;

(2) The misconduct results in or is likely to result in substantial prejudice to a client or other person;

(3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the lawyer;

(4) The misconduct is part of a pattern of similar misconduct;

(5) The lawyer's prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities; or,

(6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

When Model Rules have been violated by either serious or lesser misconduct, a penalty phase proceeds where the defendant attorney and the Committee's Executive Director are allowed to present evidence and arguments regarding aggravating and mitigating factors to assist in determining the appropriate sanction. *Neal, supra.* Aggravating factors developed by the American Bar Association Joint Committee on Professional Standards and adopted by this court in *Wilson v. Neal*, 332 Ark. 148, 16 S.W.3d 228 (2000), are:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with [the] rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge [the] wrongful nature of [the] conduct;

(h) vulnerability of [the] victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution; and,

(k) illegal conduct, including that involving the use of controlled substances.

Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify [the] consequences of [the] misconduct;

(e) full and free disclosure to [the] disciplinary board or cooperative attitude towards [the] proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when;

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and,

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in [the] disciplinary proceedings;

(k) impositions of other penalties or sanctions;

(l) remorse; and,

(m) remoteness of prior offenses.

*Wilson v. Neal, supra*; Model Standards for Imposing Lawyer Sanctions §§ 9.22 and 9.32 (1992).

Judge Lessenberry specifically discussed the mitigation offered by Price, and the aggravating factors he found in the record, before arriving at a recommendation of disbarment. Price claims his disabilities combined with some comparability and proportionality analyses, should result in either his transfer to inactive status until his disability no longer exists or a sanction considerably less than disbarment.

In *In Re Wilson*, 81 N.J. 451, 409 A.2d 1153 (1979), the New Jersey court held that the misappropriation of client or law firm funds will almost invariably result in disbarment. The New Jersey court later established the *Jacob Standard*, holding disbarment is all but certain in misappropriation cases unless there had been a "demonstration by competent medical proofs that respondent suffered a loss of competency, comprehensive or will of such magnitude that could excuse egregious misconduct that was clearly knowing, volitional and purposeful." *In Re Greenberg*, 155 N.J. 138, 714 A.2d 242 (1998).

■ Here, Price admittedly failed to maintain an attorney trust account and failed to refund monies owed clients. Price has offered no medical evidence of his mental or physical conditions in mitigation, nor any significant support for his character from the community or legal profession. Therefore, the analysis of Judge Lessenberry is not clearly erroneous.

### American with Disabilities Act

Price argues that "it is obvious from the record as a whole that respondent would not have violated so many model rules 'but for' a severe emotional impairment which is cognizable under the Americans with Disabilities Act. 42 U.S.C. Sections 121101-12213 and 12131 — Title II of the Act covers disbarment proceedings. *In Re Rose*, 776 P.2d 765-56 (Cal. 1989)."

According to Price, this is essentially what Section 25 of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law allows. The approach protects the public, punishes the disabled lawyer as much as one can do that in good conscience, but at the same time promotes the rehabilitation of an attorney who has fallen on hard times.

First, at 776 P.2d 765, which Price cites, is the case of *In Re Laura Beth Lamb*, decided August 7, 1989, which contains no mention of the Americans With Disabilities Act. Second, the ADA was not enacted until 1990, with the passage of Public Law No. 101-336. In *In Re Lamb*, the California court accepted a disbarment recommendation "for an otherwise talented lawyer whose single act of misconduct was impersonating her husband as she took and passed his California bar exam."

In the case at hand, Judge Lessenberry found that there was "insufficient creditable evidence that the respondent was impaired to the extent that he was not capable of defending himself or that the violations of the Model Rules were caused by the respondent's depression."

In *Slaten v. State Board of California*, 46 Cal.3d 48, 757 P.2d 1 (Cal. 1988), a California court held that the attorney's alleged mental problems, even if they had been sufficiently established, would be entitled to little weight in mitigation of his numerous acts of misconduct. The purpose of disciplinary proceedings is the protection of the public and the need for protection is the same whether or not the attorney is mentally impaired. Further, in

*Florida Bar v. Clement,* 662 So.2d 690 (Fla. 1995), a Florida court held that "the ADA did not prevent it from disbarring a disabled attorney who suffered from bipolar disorder and had been accused of misuse and misappropriation of client funds. The court in that case held that the ADA did not preclude disbarment because his conduct was not causally related to his disability and, even if it were, the attorney would not be protected under the ADA because he was not a 'qualified' individual with a disability."

In this case, the only proof Price offers in the record of a disability is his reference to a diagnosis of dysthymia, or dysthymic disorder, based on the information in a letter given to him by Kristen Agar, a licensed certified social worker who saw him for an assessment on two occasions. However, the letter also stated that there were other things that needed to be done before an actual diagnosis could be made. Therefore, Price did not establish a disability under the ADA.

### Motion to Conform

Ligon argues to this court that Judge Lessenberry erred in denying a motion to conform the petition for disbarment to the proof adduced at trial, and that ruling should be reversed. We disagree. Ligon contends that his evidence at trial fell into four (4) basic divisions:

> That developed and known by December 10, 2002, when the Petition for Disbarment was prepared and filed;

> That which came into knowledge of Petitioner up to February 20, 2003, the date of the lengthy deposition of Price, which information was explored with him in detail there, e.g. Carolyn Elliott's two matters;

> Information that Petitioner received or developed from February 20 to March 31, 2003, when Price dumped two boxes of his client files on Petitioner, e.g. Dr. Culpepper's unpaid medical liens in three client cases; and,

> Information received or developed from March 31 through trial, e.g., the contents and details of many of Price's client files and Ms. Littles' revelation at trial of her financial arrangement with Price.

Ligon contends that he made a prompt and good faith effort to give Price notice of whatever information and documents that came into

his knowledge and possession at each of these stages. According to Ligon, "one must understand and recognize that new complaints often continue to come in to the Office of Professional Conduct on attorneys against whom formal complaints have been filed, and especially against attorneys who the public learns are the subject of disbarment proceedings." Ligon goes on to say that his office "could have spent time and energy filing amended petition after amended petition, but to do so would put form over substance."

At the end of Ligon's case, Ligon moved, as provided by Rule 15, "to amend the pleadings, the petition for disbarment in this case, to conform to the proof that's been placed into the record." Price objected. Judge Lessenberry did not err in denying petitioner's motion to conform the petition for disbarment to the proof adduced at trial.

 During the course of the proceedings, a prosecution witness would be called to testify about an incident not set out in the petition for disbarment, and Price would object. Failing to include incidents in the petition for disbarment, then moving at the conclusion of testimony to amend the petition to conform with the proof appears to be a strategy this court finds improper. It is essential that an attorney be given fair notice in a disciplinary proceeding of the charges to be brought against him in order to achieve due process. 7 Am. Jur. 2d., Attorneys at Law § 106. The judge found that "[i]f there was only one instance and the respondent was given an opportunity to talk with the witness, granting the motion might be proper. Here there were several new issues interjected in the prosecution. Therefore, the motion to amend to conform with the evidence must be denied." There was sufficient time for petitioner to amend the petition for disbarment to include the information provided by these witnesses.

### Past Misconduct

Ligon argues that the Special Judge erred in holding that it is inappropriate for Petitioner to recite past misconduct of a respondent attorney in the petition for disbarment, and that ruling should be reversed. Again, we disagree. According to Ligon, "[a] Committee panel ballot vote on a complaint is a 'snap-shot in time' on that one matter." The Committee panel members vote on the rule violations in the complaint, and only if one or more rule violations

are found by a majority vote are the panel members provided with information concerning prior discipline of the respondent attorney.

In this case, after finding rules violations in the Stallings and Judge Wright complaints, the panel would have then had his entire disciplinary history available as it deliberated the sanction to recommend on those two cases. Ligon states that "as a result of this procedural directive, the Office of Professional Conduct has been drafting disbarment petitions to include all aggravating factors it knows of at the time the petition is drafted and filed. This procedure gives the respondent attorney notice of aggravating evidence the petitioner will present at trial and a chance to respond or object to it. Since all disbarment proceedings are bench trials, the judge should be able to disregard recitations of aggravating factors from a petitioner, and any mitigating factors from a respondent in any response to the petition or any other pleading."

While this court agrees that special judges are able to disregard certain information, matters used at trial and not included in the petition for disbarment are not to be allowed in that particular disbarment proceeding unless the pleadings are amended and notice given to respondent attorney. There was ample evidence that Price violated numerous Model Rules, as set forth in the Stallings complaint and Judge Wright's complaint, which were the only two Committee complaints receiving a majority vote to initiate disbarment proceedings. Therefore, the other complaints and past misconduct should not have been included in the petition for disbarment. This same evidence, however, may be relevant as aggravating factors to be considered in determining a sanction. Section 13(B) Procedures Regulating Professional Conduct.

Order of Disbarment Issued.

THORNTON, J., not participating.