Stark LIGON, Executive Director, Supreme Court Committee on Professional Conduct *v.* Jerry Wayne STEWART, Arkansas Bar No. 75125

06-260                                             255 S.W.3d 435

Supreme Court of Arkansas
Opinion delivered April 12, 2007

*Stuart Vess,* for appellant.

*Stark Ligon,* Executive Director, Supreme Court Committee on Professional Conduct, for appellee.

ANNABELLE CLINTON IMBER, Justice. This is an original action under the Arkansas Supreme Court Procedures Regulating Professional Conduct of Attorneys at Law ("Procedures") in which Petitioner Stark Ligon, as Executive Director of the Arkansas Supreme Court Committee on Professional Conduct ("Committee"), seeks the disbarment of Respondent Jerry Wayne Stewart ("Stewart"), an attorney licensed to practice law in the State of Arkansas. Our jurisdiction is proper pursuant to Procedures § 13(A) (2006).

A chronology of the relevant facts is as follows:

- January 10, 2006 — Stewart entered a plea of guilty in circuit court to the felony criminal offense of DWI – Fourth, and the court sentenced him to two years in prison and an additional two years suspended imposition of sentence.

- January 13, 2006 — Judgment and commitment order filed of record in the circuit court.

- February 24, 2006 — Order entered by Panel A of the Committee after presentation of a file-marked copy of the felony-conviction judgment, which order reflects the Committee's directive that a disbarment proceeding be instituted against Stewart in accordance with Procedures § 15(C)(1) (2006) and the Committee's interim suspension of Stewart's privilege to practice law.

- March 13, 2006 — Petition for disbarment filed by the Committee in this court, asserting that (1) Stewart's conviction constitutes a "serious crime" as defined in Procedures § 2(J) (2006); (2) his conduct violated Rule 8.4(b) of the Arkansas Rules of Professional Conduct, which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; and (3) his conduct constitutes "serious misconduct" as defined in Procedures § 17(B) (2006).

- April 27, 2006 — This court appointed the Honorable David Bogard as special judge to preside over the disbarment proceedings. *See Ligon v. Stewart*, 366 Ark. 229, 234 S.W.3d 315 (2006).

- September 21, 2006 — The prosecutor filed a motion to revoke suspended imposition of sentence in the criminal case based on allegations that Stewart had engaged in the unauthorized practice of law in violation of Ark. Code Ann. § 16-22-501(a)(2) (Repl. 1999).

- October 5, 2006 — Bench warrant issued ordering Stewart to appear before the circuit court on October 13, 2006, and answer the State's revocation motion.

- October 19, 2006 — Disbarment hearing before the special judge. Stewart's counsel, Stuart Vess ("Vess"), appeared and informed the special judge that his client was absent due to illness. Counsel's request for a continuance was denied. The Committee presented the testimony of witnesses and exhibits in support of its allegations in the petition. No witnesses were called by Stewart's counsel. Although the special judge granted Stewart's request to submit an affidavit by October 25, 2006, on condition that he appear for cross-examination on October 27, 2006, no affidavit was submitted.

- October 27, 2006 — Letter opinion issued setting forth the special judge's findings of fact and conclusions of law: (1) Stew-

art's DWI conviction constitutes a "serious crime" and "serious misconduct" as defined in the Procedures; (2) Stewart violated Rule 8.4(b) of the Arkansas Rules of Professional Conduct; and (3) Stewart's actions in practicing law without a valid license constitute "serious misconduct" as defined in the Procedures. The special judge recommended that Stewart be disbarred from the practice of law in Arkansas.

- December 13, 2006 — Stewart arrested on the October 5 bench warrant directing him to appear before the circuit court and answer the State's revocation motion. Within two hours of his arrest, Stewart's blood-alcohol level registered .32%, or four times the amount necessary to be charged with DWI.

- January 10, 2007 — The circuit court granted the State's motion to revoke suspended imposition of sentence and sentenced Stewart to two additional years in prison.

The special judge's findings of fact and conclusions of law, as well as his recommended sanction, are now before this court. For the reasons explained below, we conclude that the findings of fact and conclusions of law are not clearly erroneous, and we accept Judge Bogard's recommended sanction of disbarment.

Section 1(C) of the Procedures provides that disciplinary proceedings are neither civil nor criminal in nature but are *sui generis*, meaning of their own kind. *See* Procedures § 1(C) (2006); *Ligon v. Dunklin*, 368 Ark. 443 , 247 S.W.3d 498 (2007); *Ligon v. Newman*, 365 Ark. 510, 231 S.W.3d 662 (2006). The special judge's findings of fact are accepted by this court unless they are clearly erroneous. *Ligon v. Price*, 360 Ark. 98, 200 S.W.3d 417 (2004). This court imposes the appropriate sanction as warranted by the evidence. *Id.* There is no appeal from this court except as may be available under federal law. *Id.*

A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Ligon v. Dunklin, supra.* We must view the evidence in a light most favorable to the decision of the special judge, resolving all inferences in favor of his or her findings of fact. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.* The purpose of disciplinary actions is to protect the public and the administration of justice

from lawyers who have not discharged their professional duties to clients, the public, the legal system, and the legal profession. *Id.* Applying the clearly erroneous standard of review mandated by Procedures § 13(D) (2006), we now consider Stewart's assertion that there is insufficient evidence to support the Committee's petition for disbarment.

In support of his challenge to the sufficiency of the evidence, Stewart contends that he was not convicted of a "serious crime" under Procedures § 2(J) (2006). He also disputes the finding that his actions after the interim suspension of his law license constitute the practice of law. As noted previously, the special judge found that Stewart's DWI conviction constitutes a "serious crime" and "serious misconduct" as defined in the Procedures, that he violated Rule 8.4(b) of the Arkansas Rules of Professional Conduct, and that his actions in practicing law without a valid license constitute "serious misconduct" as defined in the Procedures.

Section 2(J) of the Procedures defines "SERIOUS CRIME" as:

> [A]ny felony or any lesser crime that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or any crime a necessary element of which, as determined by the statutory or common law definition of the crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft or an attempt, conspiracy or solicitation of another to commit a "serious crime."

Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law § 2(J) (2006). With regard to this section, Stewart specifically argues that, in the absence of a comma following the words "any felony," the phrase is modified and limited to felonies that reflect adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. Thus, according to Stewart, a felony DWI conviction cannot be considered a "serious crime" under the Procedures. We find no merit in this argument.

It is well settled that we construe court rules using the same criteria, including canons of construction, that are used to interpret statutes. *See Cortinez v. Arkansas Supreme Court Comm. on Prof'l Conduct*, 353 Ark. 104, 111 S.W.3d 369; *Gannett River States Pub. Co. v. Ark. Judicial Discipline and Disability Comm'n*, 304 Ark. 244,

801 S.W.2d 292 (1990). We review issues of statutory construction under a *de novo* standard. *Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 237 S.W.3d 87 (2006). Because it is for this court to decide the meaning of a statute, we are not bound by the circuit court's determination of the statute's meaning. *Id.* The first rule in determining the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*

The language in Procedures § 2(J) clearly defines a "serious crime" as "*any* felony or *any* lesser crime that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Procedures § 2(J) (emphasis added). In other words, any felony constitutes a "serious crime"; whereas, any lesser crime will constitute a "serious crime" only if it reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer. The interpretation suggested by Stewart would render the words "any felony or any lesser" mere surplusage, leaving the phrase to effectively read "any crime that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

In the instant case, applying a *de novo* standard of review and construing Procedures § 2(J) just as it reads, the special judge did not err in concluding that the felony DWI conviction constitutes a "serious crime" as defined in the Procedures. It is undisputed that Stewart entered a plea of guilty to the felony offense of DWI. According to the Procedures, a certified copy of the judgment of conviction shall be conclusive evidence of the attorney's guilt. Procedures § 15(C)(3) (2006). We hold that Stewart's conviction of the felony offense of DWI – Fourth constitutes "any felony" and is therefore a "serious crime" as defined in the Procedures.

As further support for his contention that the evidence must show a felony conviction that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects, Stewart cites testimony elicited at the disbarment hearing about one applicant having been admitted to the bar with a prior felony. The Director of the Office of Professional Programming and Executive Secretary to the Arkansas State Board of Law Examiners, Chris Thomas, when asked about any applicant with a felony of any kind on his or her record, testified as follows:

That applicant would have an exceedingly difficult time of being admitted to the Bar of Arkansas. I guess in the 18 years I've been doing this, I've overseen probably 6,000 or more applications and I can remember only one where an applicant had a previous felony who was admitted to the bar.

According to Thomas, many applicants with felonies have not been admitted to the bar. In fact, Thomas testified that he could not recall any applicant who had a DWI third or fourth offense on his or her record.

■ The special judge had the benefit of observing the witnesses and hearing the testimony. It is well settled that the determination of the credibility of witnesses is exclusively within the province of the fact-finder. *Ligon v. Newman, supra.* Accordingly, we hold that the record supports the special judge's conclusion that the felony DWI conviction constitutes a "serious crime" as defined in Procedures § 2(J).

We now turn to the special judge's conclusion that Stewart's felony DWI conviction and his actions in practicing law without a valid law license constitute "serious misconduct" as defined in Procedures § 17(B). Under § 17(B), the termination of a lawyer's privilege to practice law is warranted when the lawyer engages in "serious misconduct":

> B. *Serious Misconduct.* Serious misconduct is conduct in violation of the Model Rules that would warrant a sanction terminating or restricting the lawyer's license to practice law. Conduct will be considered serious misconduct if any of the following considerations apply:
>
> (1) The misconduct involves the misappropriation of funds;
>
> (2) The misconduct results in or is likely to result in substantial prejudice to a client or other person;
>
> (3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the lawyer;
>
> (4) The misconduct is part of a pattern of similar misconduct;
>
> (5) The lawyer's prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities; or

(6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

Procedures § 17(B) (2006).

■ Stewart initially challenges the Committee's decision to impose an interim suspension of his license to practice law based solely upon the fact that he was convicted of a felony. He further argues that because there was no basis for the interim suspension, we should not consider whether he violated the Committee's order. These arguments are without merit for the reasons stated earlier in connection with Procedures § 2(J). Pursuant to §§ 16(A)(2) and 17(E)(3)(b), the Committee was authorized to temporarily suspend Stewart's license to practice law upon proof that he had been found guilty of a "serious crime." Once again, the felony DWI conviction constitutes a "serious crime" under Procedures § 2(J), and the copy of the judgment of conviction is conclusive evidence of Stewart's guilt. Procedures § 15(C)(3).

Stewart next disputes the judge's finding that he was practicing law in violation of the Committee's interim suspension order and the judge's conclusion that his actions were "serious misconduct" under Procedures § 17(B). More particularly, he argues that "the specific allegations are that he attempted to help in an eviction of a tenant and that he attempted to assist someone appearing before a city council. It is [his] position that neither constitute the practice of law and neither incident was serious misconduct." Conversely, the Committee argues that

> [t]his argument conveniently overlooks the fact that [his] law license was placed on interim suspension by a proper action of the Committee, following a vote to initiate disbarment proceedings, and he was bound to honor and obey that suspension order until it was lifted by the Committee or this Court . . . . An experienced attorney, above all others in our society, is expected to know that valid court (and attorney discipline committee) orders are to be obeyed.

Very recently, we addressed a similar situation in *Walker v. Supreme Court Committee on Professional Conduct*, 368 Ark. 357 , 246 S.W.3d 418 (2007). In that case, the appellant attorney argued that he did not practice law during his suspension because he did not appear in court, he did not represent his client in connection with a third party, he did not accept a fee, and he did not tell his client

how to conform to the law. *Id.* Noting the Committee's assertion that "the practice of law encompasses many different actions and is not limited to appearing in court or representing a client to a third party," this court agreed with the Committee's findings that the attorney practiced law while his law license was suspended in that he held himself out as a licensed attorney during his suspension and met with his client at his former law firm's office to discuss the client's legal matter. *Id.*

With regard to the unauthorized-practice-of-law allegations in this case, Jimmy Wayne Dodson, Jr. ("Dodson"), a tenant renting a house owned by S.A. Potter ("Potter"), testified that Stewart came to his residence with Potter in July 2006. According to Dodson, Stewart represented himself to be the landlord's attorney and advised him that he had seventy-two hours in which to vacate the premises or the sheriff's department would return and remove him and his personal belongings.

Sam Gibson ("Gibson"), the Benton City Attorney, provided additional testimony about Stewart's actions at a city council meeting on August 14, 2006. Before the meeting, Gibson asked Stewart why he was at the council meeting, and Stewart replied that "he represented Mr. Potter." When Gibson asked Stewart whether he was licensed to practice law in the State of Arkansas, Stewart replied that his license was suspended. According to Gibson, Stewart said that he felt like he could lobby a legislative body as a layman without the requirement of a law license. Gibson then advised Stewart that he considered Stewart's actions to be the unauthorized practice of law and that Gibson would make a formal report to the Committee if Stewart made an appearance before the city council.

Gibson also testified that he received a telephone message on July 25, 2006, about Stewart representing Potter "in a matter where the City of Benton was trying to condemn some property." The message indicated that the matter had been voted on at a city council meeting the previous night and that Stewart had made several attempts to contact the mayor in an effort to request that the matter be moved to a later date because his client was ill and could not attend. Finally, the phone message stated as follows: "Mr. Stewart is very upset and says his client obtained the permit from the city to work on the house, which is not occupied at this time and is trying to comply with code enforcement."

Based on the record before us, there is no question that Stewart held himself out to others as representing Potter in

connection with two separate matters — the eviction of a tenant and a condemnation matter before the Benton City Council. Consequently, we conclude that Stewart, with conscious disregard of the Committee's order of interim suspension, practiced law without a valid license. We further conclude that Stewart's actions in practicing law without a valid law license constitute "serious misconduct" under Procedures § 17(B). Specifically, Stewart's misconduct was likely to result in substantial prejudice to a client or other person. Likewise, his actions in practicing law without a valid license were part of a pattern of similar misconduct.

Notwithstanding Stewart's failure to appear and testify at the disbarment hearing, he claims that under Procedures § 19, certain factors must be considered in imposing sanctions. He specifically points to the factor listed in § 19(M): "Matters offered by the lawyer in mitigation or extenuation except that a claim of disability or impairment resulting from the use of alcohol or drugs may not be considered unless the lawyer demonstrates that he or she is successfully pursuing in good faith a program of recovery." Procedures § 19(M) (2006). Based on that subsection, Stewart asserts "[he] does not even have to present evidence that he is attempting recovery from the alcohol problem to mitigate his sanction." In support of that assertion, he cites the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12111 through 12213 (2007). Stewart's argument on this point is misplaced. The Committee correctly notes that § 19(M) states that a claim of disability or impairment resulting from the use of alcohol may not be considered unless Stewart demonstrates he is successfully pursuing in good faith a program of recovery. The Committee argues that "[s]ince this record is devoid of any evidence that [Stewart] is in [the Arkansas Lawyer Assistance Program] or any other recovery program, he cannot use [this section], or his admitted alcohol impairment condition, as possible mitigation here." We agree.

This court addressed a comparable claim in *Ligon v. Price*, 360 Ark. 98, 200 S.W.3d 417 (2004). There, an action for disbarment was filed against an attorney who claimed "that [he] would not have violated so many model rules 'but for' a severe emotional impairment which is cognizable under the [ADA]." 360 Ark. at 117, 200 S.W.3d at 429. On appeal, we rejected the attorney's claim, citing with approval decisions by the supreme courts of California and Florida in cases involving similar issues:

In *Slaten v. State Bar of California*, [citations omitted], a California court held that the attorney's alleged mental problems, even if they had been sufficiently established, would be entitled to little weight in mitigation of his numerous acts of misconduct. The purpose of disciplinary proceedings is to protect the public and the need for protection is the same whether or not the attorney is mentally impaired. Further, in *Florida Bar v. Clement*, [citations omitted], a Florida court held that "the ADA did not prevent it from disbarring a disabled attorney who suffered from bipolar disorder and had been accused of misuse and misappropriation of client funds. The court in that case held that the ADA did not preclude disbarment because his conduct was not causally related to his disability and, even if it were, the attorney would not be protected under the ADA because he was not a 'qualified' individual with a disability."

360 Ark. at 117-18, 200 S.W.3d at 429.

▮ In the instant case, the Director of Client Services at the Arkansas Lawyer Assistance Program ("ArLAP"), Sarah Cearley, testified that as the custodian of records on clients and nonclients of ArLAP, she was not permitted to either confirm or deny that any attorney or judge has had any contact with ArLAP, or has ever been a client of the program. However, she noted that the confidentiality rules for ArLAP permit an individual to execute a waiver of release of information for the program to provide information under certain circumstances. In view of the fact that Stewart had not waived release of the information, Cearley could provide no further testimony. Consequently, the record is devoid of any evidence that Stewart was or is currently involved in any recovery program. Thus, his claim of disability or impairment from the use of alcohol may not be considered as a factor in imposing sanctions under Procedures § 19.

We now turn to the special judge's recommendation that the sanction of disbarment be imposed in this matter. Section 17 of the Procedures divides violations of the Arkansas Rules of Professional Conduct into two separate categories of misconduct: serious misconduct and lesser misconduct. Procedures § 17(B) and (C); *see Ligon v. Dunklin, supra*. Serious misconduct warrants a sanction of terminating or restricting a lawyer's license to practice law, while lesser misconduct does not. *Ligon v. Dunklin, supra; Ligon v. Price, supra.*

▮ Stewart's felony DWI conviction and his actions in practicing law without a valid license are more than sufficient

evidence to support the Committee's petition for disbarment. Accordingly, Stewart's license to practice law in the State of Arkansas is hereby terminated.

Order of disbarment issued.