2011 Ark. 68

**Stark LIGON, Executive Director, Supreme Court Committee on Professional Conduct, Appellant**

v.

**James P. CLOUETTE, Arkansas Bar No. 74025, Appellee.**

No. 10–844.

Supreme Court of Arkansas.

Feb. 17, 2011.

---

**3.** Appellant does not specifically challenge the amount of attorney's fees awarded.

Stark Ligon, Supreme Court Committee on Professional Conduct, for appellant.

Jeff Rosenzweig, for appellee.

DONALD L. CORBIN, Justice.

This is an appeal from a disciplinary action by the Supreme Court Committee on Professional Conduct (Committee) against attorney James P. Clouette. The Committee's Executive Director, Stark Ligon, brings the appeal from a June 24, 2010 order filed by Panel B of the Committee cautioning Mr. Clouette upon a finding that he violated Rule 8.4(b) of the Arkansas Rules of Professional Conduct (Rules). Director Ligon (the Director) raises two points on appeal: (1) that Panel B erred in cautioning Mr. Clouette for the violation of Rule 8.4(b) because Clouette's misconduct constituted "serious misconduct" as defined in section 17(B) of the Arkansas Supreme Court Procedures Regulating Professional Conduct (Procedures) and, thus, warranted the more severe sanction of disbarment or suspension; and (2) that Panel B erred in finding that Clouette did not violate Arkansas Rule of Professional Conduct 8.4(d). As this court has jurisdiction of appeals involving attorney discipline, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(5) (2010). We affirm the Committee's findings but remand for modification of the sanction imposed.

The record reveals that on March 27, 2009, Clouette was charged by felony information with one count of possession of a controlled substance, methamphetamine. This Class C felony charge arose after bank personnel reported finding a small plastic bag, with what was later determined to be methamphetamine, in the bank lobby. Video surveillance from the bank showed Clouette walking across the lobby when a white spot materialized on the floor behind him. This video footage led to Clouette's arrest and the felony charge.

Clouette was tried before the bench and found guilty on November 23, 2009. Pursuant to Arkansas Code Annotated section 5–64–413 (Repl.2005), the circuit court deferred judgment and placed Clouette on probation for a period of two years. In an order of probation filed on January 5, 2010, the circuit court imposed several conditions of probation, including completion

of a drug rehabilitation program, submission to weekly drug screens, participation in this court's Judges and Lawyers Assistance Program (JLAP), and payment of certain fees and costs.

Clouette was served with a formal complaint filed by the Director on January 11, 2010. Therein, the Director alleged that the finding of guilt of the felony charge of possession of methamphetamine entered against Clouette was a serious crime and resulted in violations of Rule 8.4(b) and (d). Clouette filed a response, asserting that although the circuit court entered a finding of guilt, no judgment of conviction had been entered and that once he successfully completes probation, there will never have been any charges pending against him. Further, he responded that he did not believe there had been a violation of Rule 8.4(b) because his conduct was not an offense involving violence, dishonesty, breach of trust, or serious interference with the administration of justice. Clouette asserted that any substance-abuse problem that he might have should be handled by the Arkansas Lawyer Assistance Program, now known as JLAP, and not by the Committee. Finally, Clouette asserted that he did not violate Rule 8.4(d) because his conduct alone, the possession of drugs, was not prejudicial to the administration of justice.

The case proceeded to a ballot vote before Panel A on March 19, 2010. Clouette then requested a public hearing, which was held before Panel B of the Committee on June 18, 2010. At the hearing, Clouette testified that he has been practicing law for the last thirty years, with his practice made up of predominantly criminal-defense cases. Clouette admitted that he was charged with and found guilty of felony possession of methamphetamine. Clouette stated that he could not specifically state that the drugs found in the bank lobby belonged to him but that it was possible because he was using drugs at that time. Clouette went on to state that he did not dispute the circuit court's finding of guilt. Clouette admitted that he had a drinking problem and formed a drug habit later in life, stating that his usage was small and primarily occurred on weekends. Clouette stated that he realized using drugs was a bad mistake and he had no one to blame but himself. Clouette stated that he was participating in the JLAP program as part of the circuit court's order of probation, as well as attending Alcoholics Anonymous meetings. He also explained that he is drug tested every week, at his own expense, and that the test is administered by the bailiff in the Fourth Division Circuit Court. Clouette admitted that the publicity related to his case did impair the amount of business in his practice, but later stated that he had only two clients ask for their money back. Clouette admitted that his conduct was disrespectful to the justice system and that he felt "terrible for the bar as a whole" because of his conduct. As for prior disciplinary proceedings, Clouette stated that he had two rules on clerk over twenty years ago, and was also referred to the Committee in 2009 because of an invalid order of extension.

Bailiff Clyde Steelman of the Fourth Division Circuit Court also testified and stated that he had been involved in drug testing Clouette since May 2009. He stated that either he or one of his employees tests Clouette on a weekly basis and that Clouette has tested negative for controlled substances on each of those occasions.

Bill Luppen, also a criminal-defense attorney, testified that he deals regularly with Clouette and has never seen him impaired or what appeared to be impaired in terms of his representation. Luppen also stated that if the Committee chose to place

Clouette on probation or require that he be supervised by another attorney, Luppen would be willing to serve in that capacity.

The Committee entered its Findings and Order on June 24, 2010, unanimously finding that Clouette violated Rule 8.4(b) by illegally possessing a controlled substance, methamphetamine, a Class C felony and "serious crime" as defined by the Procedures. The |₅Panel reasoned that the circuit court's finding that Clouette was guilty of the charge and his subsequent probation constituted "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects" and was, thus, a violation of Rule 8.4(b).

The Panel also found, by a vote of four to three, that Clouette's conduct did not violate Rule 8.4(d), which prohibits an attorney from engaging in conduct prejudicial to the administration of justice. The Panel then, by a vote of four to three, voted for the sanction of a caution, with the three dissenting members voting for a reprimand. In addition, the Panel voted to place Clouette on probation for the same time period ordered by the Pulaski County Circuit Court and subject to the same conditions, including drug testing. The Panel stated that Bill Luppen, or another attorney mutually agreed upon by Clouette and the Director, would serve as Clouette's probation monitor for the Committee and was to report any violations of the terms of probation to the Committee. From that order comes the instant appeal.

▮ The standard of review for an appeal from the Committee is as follows: Pursuant to section 12(B) of the Procedures, our standard of review when reviewing a decision of the Committee is de novo on the record. A de novo review on the record determines whether the factual findings were clearly erroneous, or whether the result reached was arbitrary or groundless. Due deference is given to the Committee's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. However, conclusions of law are given no deference on appeal. The Committee's findings of fact will not be reversed unless the findings are clearly erroneous, and the action taken by the Committee will be affirmed unless it is clearly against the preponderance of the evidence.

₆Ligon v. Rees, 2010 Ark. 225, at 12–13, 364 S.W.3d 28, 39 (citations omitted).

As his first point on appeal, the Director asserts that Clouette's criminal misconduct constituted serious misconduct and thus warrants the sanction of disbarment or suspension of his license. Clouette counters that the sanction of disbarment is not available as no disbarment action has been instituted. He further argues that the Committee's imposition of a caution was not clearly erroneous. Before addressing the merits of the Director's argument, we first look to whether the sanction of disbarment is available in this matter.

Under section 13 of the Procedures, the process for a disbarment action, as relevant to the instant matter, is as follows:

(A) An action for disbarment *shall be filed as an original action with the Clerk of the Supreme Court.* Upon such filing, the Arkansas Supreme Court, pursuant to Amendment 28 of the Arkansas Constitution, shall assign a special judge to preside over the disbarment proceedings.... In disbarment suits, the action shall proceed as an action between the Executive Director and the respondent. Proceedings shall be held in compliance with the Arkansas Rules of Civil Procedure and the Arkan-

sas Rules of Evidence, and trial shall be had without a jury.

(B) The judge shall first hear all evidence relevant to the alleged misconduct and shall then make a determination as to whether the allegations have been proven. Upon a finding of misconduct, the judge shall then hear all evidence relevant to an appropriate sanction to be imposed, including evidence related to the factors listed in Section 19 and the aggravating and mitigating factors set out in the American Bar Association's Model Standards for Imposing Lawyer Sanctions, §§ 9.22 and 9.32 (1992). See Wilson v. Neal, 332 Ark. 148, 964 S.W.2d 199 (1998).

(C) The judge shall make findings of fact and conclusions of law with respect to the alleged misconduct of the respondent attorney and the imposition of sanctions, including the factors discussed in subsection 13(B)....' The judge shall make a recommendation as to the appropriate sanction from those set out in Section 17(D).

(D) The findings of fact, conclusions of law, and recommendation of an appropriate sanction shall be filed with the Clerk of the Supreme Court along with a transcript and the record of the proceedings. Upon the filing, the parties shall file briefs as in other cases. The findings of fact shall be accepted by the Supreme Court unless clearly erroneous. The Supreme Court shall impose the appropriate sanction, if any, as the evidence may warrant. In imposing the sanction of suspension, the attorney may be suspended for a period not exceeding five (5) years. There is no appeal from the decision of the Supreme Court except as may be available under federal law.

(Emphasis added.)

 Here, there has been no compliance with section 13. No action for disbarment was instituted with our clerk. A special judge has not been appointed to hear evidence and to make findings of fact, conclusions of law, or any recommendation for this court to review. As such, the sanction of disbarment is not available in this case.

 In so ruling, we reject the Director's assertion that this court has the inherent authority to order an attorney disbarred. This court's authority over the discipline of attorneys does not mean that we will ignore the specific procedures set forth for instituting a disbarment proceeding. While we do conduct a de novo review of the record before us, we will not go so far to order disbarment in the absence of the Director initiating a disbarment proceeding. If the Director felt that disbarment was the appropriate sanction, he had the option of complying with section 13 and instituting such an action before this court. He chose not to do so, and we will not now impose the sanction of disbarment.

Next, we turn to the Director's assertion that the Committee clearly erred in voting to caution Clouette after finding that he committed serious misconduct and violated Rule 8.4(b). Section 17(B) defines serious misconduct in relevant part as follows:

B. *Serious Misconduct.* Serious misconduct is conduct in violation of the Model Rules that would warrant a sanction terminating or restricting the lawyer's license to practice law. Conduct will be considered serious misconduct if any of the following considerations apply:

. . .

(6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

Section 2(J) of the Procedures defines "Serious Crime" as being "any felony...."

In the instant case, even though the circuit court deferred imposition of sentence, the fact remains that the court found that Clouette was guilty of the felony offense of possession of methamphetamine. It is this finding that supports the Panel's conclusion that Clouette violated Rule 8.4(b). Notably, Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Rule 8.4(b) does not require that an attorney be convicted in order for the Committee to enter a finding of professional misconduct. *See Ligon v. Newman,* 365 Ark. 510, 231 S.W.3d 662 (2006). Because our own case law is dispositive of this issue, we need not address the Director's reliance on cases from other states regarding the issue of whether a criminal conviction is required as a prerequisite for a finding of misconduct.

Turning now to the issue of the sanction, we note that the Procedures provide in relevant part:

D. *Types of Sanctions.* Misconduct shall be grounds for one or more of the following sanctions:

(1) DISBARMENT: The termination of the lawyer's privilege to practice law and removal of the lawyer's name from the list of licensed attorneys.

(2) SUSPENSION: A limitation for a fixed period of time on the lawyer's privilege to engage in the practice of law.

(3) INTERIM SUSPENSION: A temporary suspension for an indeterminate period of time of the lawyer's privilege to engage in the practice of law pending the final adjudication of a disciplinary matter.

(4) REPRIMAND: A severe public censure issued against the lawyer.

(5) CAUTION: A public warning issued against the lawyer.

(6) WARNING: A non-public caution issued against the lawyer.

(7) PROBATION: Written conditions imposed for a fixed period of time, and with the lawyer's consent.

Ark. Sup. Ct. P. Regulating Prof'l Conduct § 17(D).

While there is a range of sanction available, even for serious misconduct, it was error for the Committee to caution Clouette because section 17(E)(5) states that a caution is appropriate for "lesser misconduct." There is no dispute that Clouette committed serious misconduct, thus, the sanction of caution was not available in this instance. Therefore, we remand the instant matter to the Committee for consideration of the appropriate factors set forth in section 19 of the Procedures and imposition of an appropriate sanction pursuant to section 17.

As his second point on appeal, the Director argues that the Panel erred in finding that there was no evidence that Clouette violated Rule 8.4(d). Specifically, the Director argues that the criminal misconduct of Clouette resulted in prejudice or diminution of respect for the justice system.

Rule 8.4(d) states that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." Rule 8.4(d) has been interpreted to encompass a broad range of misconduct. *See Walker v. Sup. Ct. Comm. on Prof'l Conduct,* 368 Ark. 357, 246 S.W.3d 418 (2007) (failure to timely handle client's case); *Ligon v. Price,* 360 Ark. 98, 200 S.W.3d 417 (2004) (failure to respond to discovery requests and other pleadings); *Gillaspie v. Ligon,* 357 Ark. 50, 160 S.W.3d 332 (2004) (failure to file a timely notice of appeal in a criminal case); *Seeco, Inc. v. Hales,* 334 Ark. 134, 969

S.W.2d 193 (1998) (attorney's participation in a series of events to force a trial judge to recuse in a particular case); *Fink v. Neal*, 328 Ark. 646, 945 S.W.2d 916 (1997) (failure to make a reasonable inquiry into facts during critical stages of litigation); and *Clark v. Sup. Ct. Comm. on Prof'l Conduct*, 320 Ark. 597, 898 S.W.2d 446 (1995) (ignoring a client's case for nearly two years after defendants filed a motion to dismiss). The common thread in the aforementioned cases is that an attorney took some action or did not take action that directly impacted a client's case. Here, there was no evidence that any of Clouette's clients were affected or prejudiced by his misconduct.

Moreover, while it is true that misconduct on the part of any attorney brings disrepute to the legal system, we cannot say that the Panel in this instance clearly erred in finding no violation of Rule 8.4(d). Here, the evidence was that Clouette was well respected and had a solid criminal-defense practice. In fact, when asked by the Director whether Clouette's felony drug possession undermined the public and client confidence in the criminal-justice system, Luppen admitted that it was possible but further stated that

if you look specifically to Mr. Clouette, I would say that that has not happened, and I will tell you that Mr. Clouette is an integral part of the criminal justice system in Pulaski County. He has a wide practice. He represents lots of people, he does a really good job, and I think the prosecutors and the judges and everybody here depend on Mr. Clouette and his expertise and experience and his knowledge and skill to keep the criminal justice system going. And I—you know, I can't argue with you that, you know, a lawyer in the criminal justice system having drugs is not a good thing, and some people would say that that's not good, but Mr. Clouette,

just by his very presence and his experience and it hasn't—I don't believe that it's had that effect in Pulaski County on the criminal justice system. . . .

I can't say no, that nobody would think that that might hurt the criminal justice system, but I haven't seen that specifically in Mr. Clouette's case.

In sum, we cannot say that the Panel clearly erred in finding no violation of Rule 8.4(d).

Affirmed in part; reversed and remanded in part.