Jimmie L. WILSON *v.* James A. NEAL

96-1524                                                  964 S.W.2d 199

Supreme Court of Arkansas
Opinion delivered March 5, 1998

*George E. Hairston, E. Dion Wilson, Victor Hill, Roy C. Lewellen,* and *Sam Whitfield, Jr.,* for appellant.

*Daggett, Van Dover, Donovan & Perry, PLLC,* by: *Robert J. Donovan,* for appellee.

ANNABELLE CLINTON IMBER, Justice. Attorney Jimmie L. Wilson appeals the trial court's order of summary judgment which disbarred him from the practice of law in Arkansas. We reverse and remand for a hearing to determine the appropriate sanction for Wilson's violation of Model Rule of Professional Conduct 8.4(b).

In the words of Chief Judge Waters of the United States District Court, the procedural background of this case is "long and tortured," *Neal v. Wilson,* 920 F. Supp. 976 (E.D. Ark. 1996), and it has been discussed in detail in three other opinions. *See Neal v. Wilson,* 112 F.3d 351 (8th Cir. 1997); *Neal v. Wilson,* 321 Ark. 70, 900 S.W.2d 117 (1995); *Neal v. Wilson,* 316 Ark. 588, 873

S.W.2d 552 (1994). The facts relevant to the issues presented in this appeal are as follows.

In 1981 and 1982, Jimmie L. Wilson borrowed approximately $775,230 from the Farmers Home Administration (FmHA) for farm operating expenses. The loan was secured by an FmHA lien on Wilson's crops. On August 22, 1990, Wilson pled guilty in the United Stated District Court, Eastern District, to three counts of violating 18 U.S.C. § 658[1] by "knowingly" disposing of soybeans and rice that were mortgaged and pledged to the FmHA, and two counts of violating 18 U.S.C. § 641[2] by "knowingly" taking money from a Department of Agriculture bank account and using it for unapproved purposes. For these crimes, Wilson was sentenced to four and one-half months in prison and three years of probation. The United States District Court also suspended Wilson's license to practice law in the federal courts until final disposition of the disciplinary actions taken against him.

On March 29, 1991, the Arkansas Committee on Professional Conduct ("Committee") notified Wilson that a complaint had been filed against him alleging that his misdemeanor convictions in the federal court constituted a violation of the Model Rules of Professional Conduct. Wilson failed to respond either personally or in writing to the merits of the allegations contained in the complaint. On July 22, 1991, the Committee determined by a unanimous vote that Wilson had violated the Model Rules, and on October 9, 1991, the Committee filed a disbarment action against Wilson in the Phillips County Circuit Court.

---

[1] This statute says in relevant part that:

Whoever, with intent to defraud, knowingly conceals, removes, disposes of, or converts to his own use or to that of another, any property mortgaged or pledged to, or held by, . . . the Secretary of Agriculture acting through the Farmers Home Administration . . . shall be fined under this title or imprisoned . . . or both . . . .

[2] This statute says in relevant part that:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or any department or agency thereof, . . . shall be fined under this title or imprisoned . . . or both . . . .

Over the next five years, numerous pleadings and interlocutory appeals were filed in this case. *See Neal v. Wilson*, 112 F.3d 351 (8th Cir. 1997); *Neal v. Wilson*, 920 F. Supp. 976 (E.D. Ark. 1996); *Neal v. Wilson*, 321 Ark. 70, 900 S.W.2d 117 (1995); *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994). Finally, on August 30, 1996, the Phillips County Circuit Court entered summary judgment in favor of the Committee. In its order, the court: 1) rejected Wilson's argument that the Committee had denied him due process of law by denying his requests for extensions to respond to the initial complaint; 2) denied Wilson's request for additional discovery; 3) found that Wilson had violated Model Rule 8.4; and 4) held that disbarment was the appropriate sanction. From this order, Wilson filed a timely notice of appeal.

On appeal, Wilson contends that there were numerous errors and violations of his constitutional rights throughout the disbarment process before the Committee and the trial court. We will address these issues in the order in which they arose.

## I. *Double Jeopardy and Collateral Estoppel*

As previously mentioned, this is the third state appeal in this matter. For his first argument on appeal, Wilson contends that the doctrines of collateral estoppel and double jeopardy should have prevented the Committee from continuing the disbarment action against him. Wilson is procedurally barred from raising these arguments on appeal because they were not raised below or ruled upon by the trial court. *Wilson v. Rebsamen Ins. Inc.*, 330 Ark. 687, 957 S.W.2d 678 (1997); *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997). It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. *Akins v. State*, 330 Ark. 228, 955 S.W.2d 483 (1997). Accordingly, we reject this argument without reaching the merits.

## II. *Requests for Extensions*

Next, Wilson contends that the Committee violated his right to procedural due process when it denied his requests for an extension to prepare a response to the initial complaint filed before the Committee. Citing *McCullough v. Neal*, 314 Ark. 372, 862

S.W.2d 279 (1993), the Committee contends that this issue is procedurally barred because Wilson failed to exhaust his administrative remedies. According to Sections 5(E)(3) and (F)(1) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, an attorney who has been cautioned, reprimanded, or suspended has a right to a *de novo* hearing before the Committee. In *McCullough*, we held that an attorney who failed to exercise this administrative remedy was procedurally barred from contesting the Committee's decision on direct appeal. *Id*. This case, however, is distinguishable from *McCullough*, because if the vote is to initiate disbarment proceedings, Section 5(E)(5) declares that the Committee shall file a disbarment action in circuit court and "there shall be no hearing before the committee." Because Wilson did not have any further administrative remedies before the Committee, as did the attorney in *McCullough*, we conclude that the issue is not procedurally barred.

■     Turning to the merits, we have previously explained that the power to regulate and define the practice of law is a prerogative of the judicial department as one of the divisions of government. *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994); *Weems v. Supreme Court Comm. on Prof'l Conduct*, 257 Ark. 673, 523 S.W.2d 900 (1975). Moreover, Amendment 28 to the Arkansas Constitution declares that, "[t]he Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." Accordingly, we have promulgated the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys of Law, which state in relevant part that:

(1) Upon receiving information of such complaint, the attorney shall have twenty (20) days in which to file a written response consisting of an original and eight (8) copies with the Executive Director . . . .

(2) The Executive Director is authorized to grant, at the request of an attorney, an extension of reasonable length for the filing of a response. Subsequent requests for extensions must be in written form and will be ruled on by the Chairman of the Committee.

Section 5(C).

■ On March 29, 1991, the Committee sent Wilson a letter announcing that a complaint had been filed against him. According to Section 5(C)(1), Wilson had twenty days to respond to the complaint. Instead of filing a response, Wilson's attorney sent a letter to the Committee on April 15, 1991, asking for an extension until August 30, 1991. The Executive Director of the Committee granted Wilson an extension until May 20, 1991. On appeal, Wilson argues that the Committee violated his rights because it granted him an extension for only one month instead of for the three and one-half months that he requested. According to Section 5(C)(2), the Executive Director has the authority to grant the first extension for a "reasonable length" of time. We hold that one month was a reasonable length of time because Wilson already had twenty days to respond, and he was represented by competent counsel who could have helped him prepare his response.

■ On May 20, 1991, Wilson tendered a second request for an extension which was denied by the Committee Chairman. At this point, the Committee had already given Wilson one extension, thereby allowing him almost two months instead of the usual twenty days to file his response. Accordingly, we also hold that the Committee did not violate Wilson's rights when it denied his second request for an extension.

### III. Constitutionality of the Procedures Regulating Professional Conduct

After denying Wilson's two requests for extensions, the Committee determined by a unanimous vote that Wilson's misdemeanor convictions in the federal court constituted a violation of the Model Rules. The Committee then filed a disbarment action against Wilson in the Phillips County Circuit Court pursuant to Section 6(B), which states in relevant part that:

> When a complaint against an attorney is based on a conviction of a felony or a crime which also violates Rule 8.4(b) of the Model Rules of Professional Conduct, the Committee *shall* institute an action of disbarment.

(Emphasis added.)

■ On appeal, Wilson argues that this rule is unconstitutional because it grants the Committee unfettered discretion to determine what crimes constitute a violation of Model Rule 8.4(b), and to arbitrarily choose when they will pursue disbarment. We find no merit to either of these arguments because the rule unambiguously proclaims that the Committee "shall" institute a disbarment action when it determines that a crime constitutes a violation of Model Rule 8.4(b). The Committee simply has no discretion on whether or not to file a disbarment action. Moreover, it is the trial court, not the Committee, that ultimately determines whether there has been a violation of the Model Rules, and whether disbarment is the appropriate sanction. Section 5(G)(2). Accordingly, we also find no merit to Wilson's third point on appeal.

## IV. Discovery

After the disbarment action was filed, Wilson propounded interrogatories to the Committee which included a detailed request for information regarding any complaint the Committee had ever received against an attorney who had been convicted of a criminal offense. Wilson contended that he needed this information to develop his disparate-treatment argument. When the information was not forthcoming, Wilson filed a motion to compel, which was denied by the trial court. Wilson claims that the trial court committed reversible error when it rendered this ruling. We disagree.

■ ■ It is well settled that a trial court has wide discretion in matters pertaining to discovery, and thus we will reverse a trial court's ruling only when there has been an abuse of discretion. *Parker v. Southern Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 935 S.W.2d 556 (1996); *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992). Moreover, a discovery motion must be considered in light of the particular circumstances which give rise to the request and the need of the movant for the information requested. *Parker, supra; Marrow v. State Farm Ins. Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978).

■ We hold that the trial court did not abuse its discretion when it denied Wilson's motion to compel for several reasons. First, the majority of the information that Wilson requested was a matter of public record which he could have easily obtained from the Arkansas Supreme Court Clerk pursuant to Section 4(C), which declares that:

> When a letter of caution, reprimand, or suspension becomes final under these Procedures, or when the Committee decides to initiate disbarment proceedings, a copy of such shall be forwarded to the Clerk and shall be maintained as a public record by the Clerk.

Second, during the hearing on Wilson's motion to compel, the Executive Director of the Committee voluntarily took the stand and answered many of Wilson's questions about other attorneys who had been convicted of criminal offenses. The Committee also presented its files, which were reviewed *in camera* by the trial court. After reviewing the materials, the court determined that the Committee had adequately complied with Wilson's request.

Finally, the court found that Wilson had been given ample opportunity over the five years that this case was pending to engage in meaningful discovery, but that he had been "less than diligent." Based on these circumstances, we cannot say that the trial court abused its discretion when it denied Wilson's motion to compel. Accordingly, we also affirm on this point.

### V. Violation of Model Rule 8.4(b)

■ The first issue the trial court had to resolve in the disbarment action was whether Wilson's misdemeanor convictions constituted a violation of Model Rule 8.4(b). Model Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." In his defense, Wilson argued that his misdemeanor convictions did not constitute a violation of this rule because he did not commit the crimes with a culpable *mens rea*. We hold that the trial court properly rejected this argument for two reasons.

First, both crimes to which Wilson pled guilty required knowing conduct. *See* 18 U.S.C. §§ 641 and 658. Wilson pled guilty to three charges that he *knowingly* disposed or converted to his own use crops pledged to the FmHA, and to two charges that he *knowingly* took money from a controlled Department of Agriculture bank account and used the money for unapproved purposes. Second, Section 6(B) declares that a certified copy of the judgment of conviction "shall be conclusive evidence of the attorney's guilt" of the underlying crime, and that the attorney may not "offer evidence inconsistent with the essential elements of the crime for which he was convicted." Thus, once Wilson was convicted in federal court, he was precluded from relitigating the elements of the crimes during the disbarment proceeding.

After considering the arguments by both sides, the trial court entered summary judgment in favor of the Committee. As we have said on numerous occasions, a trial court may grant summary judgment pursuant to Ark. R. Civ. P. 56 if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Rebsamen Ins. Inc.*, 330 Ark. 687, 957 S.W.2d 678 (1997); *Sanders v. Bradley County Human Serv. Pub. Facilities Bd.*, 330 Ark. 675, 956 S.W.2d 187 (1997). In making this determination, we review the evidence in the light most favorable to Wilson, as the party resisting the motion, and resolve all doubts and inferences in his favor. *Wilson, supra*; *Sanders, supra*. In this case, the trial court concluded that the "law of the case" and the "undisputed facts" required a determination that Wilson's misdemeanor convictions constituted a violation of Model Rule 8.4(b). These rulings will be considered separately.

We hold that the trial court erred when it concluded that the law-of-the-case doctrine prevented it from deciding whether Wilson violated Model Rule 8.4(b). The law-of-the-case doctrine precludes a trial court from considering questions that were "explicitly or implicitly" determined on appeal. *Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997). In *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994), Wilson's first appeal in this case, one of the issues on appeal was whether the

Model Rules were applicable because they were adopted after Wilson committed the federal crimes, but before he was convicted. We held that the Model Rules applied because the relevant date was the day Wilson was convicted and not the days on which the crimes were committed. *Id.* In making this determination we said:

> Rule 8.4(b), which defines "professional misconduct" in part as the commission of "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," and which comprehends the misdemeanor charges to which Mr. Wilson pled guilty, was effective as part of the Model Rules of Professional Conduct on January 1, 1986, having been adopted by per curiam order on December 16, 1985.

*Id.* With this language, we were merely clarifying our holding that the Model Rules applied to Wilson's federal convictions. We were not, however, either "explicitly or implicitly" making a factual conclusion that Wilson's conduct constituted a violation of Model Rule 8.4. In fact, later in the opinion we specifically denied the Committee's request to pronounce judgment on this issue because the trial court had not ruled on the matter. *Id.* Accordingly, we conclude that the trial court erred when it found that the law of the case mandated summary judgment in favor of the Committee.

This, however, does not end our inquiry because the trial court also found that "the undisputed facts" established that Wilson's federal convictions constituted a violation of Model Rule 8.4(b). We agree. According to Model Rule 8.4(b), it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The Comments to Rule 8.4 further explain that:

> Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return . . . . Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving

violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category.

(Emphasis added.)

In this case, Wilson was convicted of five counts of "knowingly" converting money and property that belonged to the federal government in violation of 18 U.S.C. §§ 641 and 658. Although all five crimes were misdemeanors, we agree with the trial court that these convictions involved dishonesty and a breach of trust, and seriously undermined "the confidence of the public in our legal profession." *See In re Lee*, 305 Ark. 196, 806 S.W.2d 382 (1991). Because we have no hesitation in holding that Wilson's convictions reflected adversely on Wilson's fitness to practice law, we affirm the trial court's finding that Wilson violated Model Rule 8.4(b).

## VI. Right to A Full Trial

Next, Wilson argues that by entering summary judgment on this issue, the trial court denied him a right to an "action" and a "trial" under Section 5(G)(1), which states that:

> An action for disbarment shall be filed with the Clerk of the Circuit Court of the county in which the attorney resides, or in which the alleged violation was committed. In disbarment suits, the action shall proceed as an action between the Executive Director and the respondent. Proceedings in the Circuit Court shall be held in compliance with the Arkansas Rules of Civil Procedure and trial shall be had before the Circuit Judge without a jury.

Wilson somehow construes this section to give him an absolute right to a full trial and thus precludes the entry of summary judgment. We disagree. According to Section 5(G)(1), the Rules of Civil Procedure, including Ark. R. Civ. P. 56 on summary judgments, apply once the Committee files a disbarment action in the circuit court. Because summary judgment was appropriate in this case for the reasons explained above, we hold that the trial court was not required to hold a full trial.

## VII. Appropriate Sanction

Once the trial court concluded that Wilson's federal convictions constituted a violation of Model Rule 8.4(b), the next step was to determine the appropriate sanction. It is in this final stage of the disbarment proceeding that we find reversible error.

In its order of summary judgment, the trial court incorrectly found that Wilson "must be disbarred as a matter of law" according to Section 6(B), which provides that:

> When a complaint against an attorney is based on a conviction of a felony or a crime which also violates Rule 8.4(b) of the Model Rules of Professional Conduct, the Committee *shall institute an action of disbarment.*

(Emphasis added.) We disagree with the trial court's reasoning because this section declares what type of action the Committee must file and does not limit the sanctions the court may impose. Instead, we hold that the correct provision is Section 5(G)(2), which provides in relevant part that:

> If the Circuit Judge finds that the attorney has violated the Model Rules, he shall *caution, reprimand, suspend, or disbar such attorney as the evidence may warrant.*

(Emphasis added). It is clear from this provision that the trial court was not required to disbar Wilson, but was entitled to select any one of the four listed sanctions. Accordingly, we hold that the trial court erred when it concluded that disbarment was required as a matter of law.

Again, this does not end our analysis because the trial court also declared in its order of summary judgment that "even if this conclusion were not reached as a matter of law, this Court's conclusion would be the same, based upon the undisputed facts." We cannot agree because the trial court reached this conclusion without all the information necessary to make a decision on the appropriate sanction.

During the hearing on the Committee's motion for summary judgment, the trial court assured Wilson that if it concluded that he had violated Rule 8.4, it would hold a second hearing to

determine the appropriate sanction. The trial court, however, never held the second hearing as promised, and instead ordered disbarment before Wilson was ever provided an opportunity to present evidence in mitigation. Clearly, at this point in the disbarment proceeding, Wilson should not have been allowed to relitigate the elements of the underlying crimes, or whether his convictions constituted a violation of Model Rule 8.4(b). Both parties, however, should have been able to present some evidence and arguments as to which of the four sanctions was appropriate in this case.

██ ██ The American Bar Association Joint Committee on Professional Standards has developed the following list of aggravating and mitigating factors that we think are useful in a court's determination of an appropriate sanction:

Aggravating Factors:
- (a)  prior disciplinary offenses;
- (b)  dishonest or selfish motive;
- (c)  a pattern of misconduct;
- (d)  multiple offenses;
- (e)  bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with [the] rules or orders of the disciplinary agency;
- (f)  submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
- (g)  refusal to acknowledge [the] wrongful nature of [the] conduct;
- (h)  vulnerability of [the] victim;
- (i)  substantial experience in the practice of law;
- (j)  indifference to making restitution;
- (k)  illegal conduct, including that involving the use of controlled substances.

Mitigating Factors:
- (a)  absence of a prior disciplinary record;
- (b)  absence of a dishonest or selfish motive;
- (c)  personal or emotional problems;
- (d)  timely good faith effort to make restitution or to rectify [the] consequences of [the] misconduct;
- (e)  full and free disclosure to [the] disciplinary board or cooperative attitude towards [the] proceedings;

(f)   inexperience in the practice of law;

(g)   character or reputation;

(h)   physical disability;

(i)   mental disability or chemical dependency including alcoholism or drug abuse when;

    (1)   there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

    (2)   the chemical dependency or mental disability caused the misconduct;

    (3)   the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

    (4)   the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j)   delay in [the] disciplinary proceedings;

(k)   impositions of other penalties or sanctions;

(l)   remorse;

(m)   remoteness of prior offenses.

MODEL STANDARDS FOR IMPOSING LAWYER SANCTIONS §§ 9.22 and 9.32 (1992).

██  For these reasons, we affirm the trial court on the first six issues and reverse only on the final issue of sanctions. We remand for a sanction hearing during which each side may present evidence and arguments regarding the above-listed aggravating and mitigating factors. The parties, however, must limit their arguments to these matters, and for the reasons explained above, are precluded from relitigating the elements of underlying federal crimes, or whether those convictions constituted a violation of the Model Rules.

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.

Special Justices GENE E. McKISSIC, CHARLES D. BARNETTE, and JACK T. LASSITER join in this opinion.

NEWBERN, GLAZE, and CORBIN, JJ., not participating.