2009 Ark. 136

**Stark LIGON, Executive Director of the Supreme Court Committee on Professional Conduct, Petitioner,**

v.

**Woodson D. WALKER, Respondent.**

No. 06–1493.

Supreme Court of Arkansas.

March 12, 2009.

**2**

Stark Ligon, Executive Director, Supreme Court Committee on Professional Conduct, Little Rock, for petitioner.

Woodson D. Walker, Little Rock, pro se respondent.

ELANA CUNNINGHAM WILLS, Justice.

This is an original action in a disbarment proceeding. *See* P. Reg. Prof'l Conduct § 13(A). Respondent Woodson D. Walker was licensed to practice law in Arkansas on April 4, 1976. For many years, Walker maintained a successful practice in Little Rock; however, in the late 1990s, he began experiencing personal and professional difficulties. In April of 2003, he was suspended from the practice of law for one year.[1] On December 8, 2006, Panel A of the Supreme Court Committee on Professional Conduct ("the Committee" or "CPC") entered an order of interim suspension as a result of a complaint filed against Walker by a former client, Andre Stephens.

Following the order of interim suspension, the Executive Director of the Committee, Stark Ligon, filed a petition for disbarment against Walker on December 29, 2006. The petition for disbarment listed ten counts that alleged various violations of the Arkansas Model Rules of Professional Conduct and noted "other matters regarding [Walker's] fitness to hold a law license, or aggravating factors to be considered." Walker filed a response to the petition for disbarment on January 16, 2007. On January 29, 2007, this court appointed the Honorable John Lineberger as a special judge to preside over the proceedings. *See Ligon v. Walker*, 368 Ark. 605, 248 S.W.3d 482 (2007) (per curiam).

On July 6, 2007, Ligon filed a first amended petition for disbarment. In this petition, Ligon alleged that, upon further investigation into the matters that formed the basis for the initial petition, new and additional facts had been discovered that also constituted violations of the Rules of Professional Conduct. The first amended petition raised fifteen new counts against Walker. Two of the new counts pertained to the Andre Stephens matter, including Walker's failure to report a malpractice claim and his failure to maintain professional liability insurance coverage for the benefit of a client. In addition, several of the new counts arose from Walker's alleged mishandling of the affairs of Jarvis Rodgers, another client who complained to the Committee about Walker. Other counts involved allegations of improper use of Walker's IOLTA trust account. Three other new counts stemmed from Walker's alleged violations of restrictions placed on the activities of attorneys whose licenses have been suspended. Finally, the first amended petition added one new aggravating factor. Walker filed a response to the first amended petition on July 24, 2007.

Ligon filed a second amended petition on October 31, 2007, after the Committee received trust account records from Walker's law partner, Larry Dunklin, in September 2007. The second amended complaint added thirty-nine new counts that alleged additional violations of the Rules of Professional Conduct with regard to the Jarvis Rodgers matter, as well as additional allegations of violations concerning Walker's IOLTA account. On the same day, Ligon filed a third amended petition for disbarment that alleged three new and additional counts.

---

1. In *Walker v. Supreme Court Committee on Professional Conduct*, 368 Ark. 357, 246 S.W.3d 418 (2007), an appeal stemming from another disciplinary action, this court noted that, as of January 2007, Walker's law license has been continually suspended since April 21, 2003. *See Walker*, 368 Ark. at 361, n. 2, 246 S.W.3d at 421, n. 2.

On November 15, 2007, Walker filed a motion to strike the amended petitions. In his motion, Walker contended that the amended petitions included new, previously unraised allegations that encompassed "different clients and totally unrelated issues from the original petition." He further alleged that the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law ("the Procedures") do not permit the Executive Director to file amended petitions that raise "new allegations not previously mentioned."

Judge Lineberger entered an order on November 19, 2007, denying Walker's motion to strike the amended pleadings. The judge found that, as to the first amended petition, Walker filed a timely response to it and did not raise any of his procedural or jurisdictional issues and was thus deemed to have waived those arguments. The judge generally denied the motion to strike the second and third amended petitions[2] and directed Walker to file an answer or response within the time provided by the Arkansas Rules of Civil Procedure.

Walker filed neither an answer nor a response to the second and third amended petitions, and Ligon filed a motion for default judgment on these two amended petitions on November 29, 2007. When no answer was filed by December 18, 2007, Ligon filed a renewed motion for default judgment on the second and third amended petitions. In response, Walker attempted to take an appeal from the judge's November 19, 2007, order denying his motion to strike the amended petitions. Ligon responded to Walker's notice of appeal on December 26, 2007, asserting that the order was not a final, appealable order under Ark. R.App. P.-Civ. 2. This court granted Ligon's motion to dismiss Walker's appeal on January 24, 2008.

On January 16, 2008, the special judge entered an order noting that Walker had "failed to file any answer or response to the Second Amended Petition for Disbarment and Third Amended Petition for Disbarment or to the two motions seeking default judgment on these pleadings." Accordingly, the judge granted default judgment on these two petitions against Walker "as to all allegations, charges of misconduct, and other substantive matters set out [in the amended petitions] without the need for [Ligon] to establish same by proof at trial."

On January 18, 2008, Ligon filed a fourth amended petition for disbarment setting out eight new counts. In this petition, Ligon alleged that, on July 27, 2007, the Committee had served on Walker a second motion to produce in which copies of Walker's 2002–2006 tax returns were requested. After repeated orders directing Walker to divulge the information, Walker finally submitted an affidavit on January 17, 2008, in which he stated that he had "made appropriate inquiry" with the Internal Revenue Service and had been informed that he had filed no income tax returns for the years 2002–2006. The eight new counts in the fourth amended petition all arose from Walker's failure to file tax returns or pay taxes for these years and alleged violations of Arkansas Model Rules of Professional Conduct 8.4(b) and 8.4(c).

Walker filed a motion for continuance on February 5, 2008, in which he asserted that the late filing of the fourth amended petition prevented him from mounting a proper defense. Ligon responded on

---

**2.** Judge Lineberger subsequently clarified that the motion to strike was denied based on his ruling in *Ligon v. Dunklin*, 368 Ark. 443, 247 S.W.3d 498 (2007), and *Ligon v. Price*, 360 Ark. 98, 200 S.W.3d 417 (2004).

February 7, 2008, countering that the delay in filing the fourth amended complaint was due to Walker's failure to timely comply with the judge's orders to provide his tax returns. Ligon also asserted that Walker could hardly claim to be prejudiced by the addition of claims concerning his failure to file taxes when he had already admitted failing to file them.

On February 11, 2008, Walker filed a motion to strike the fourth amended petition or, in the alternative, a response to the fourth amended petition. Judge Lineberger entered an order on February 19, 2008, denying Walker's motion to strike the fourth amended petition, noting that the primary cause for the shortened time for trial preparation was Walker's own failure to timely provide his tax returns. The case then proceeded to trial on February 19–22, 2008.

On June 28, 2008, Judge Lineberger entered his findings of fact, conclusions of law, and recommendation of an appropriate sanction. After reviewing the facts presented at trial and considering the factors for imposing sanctions set out in section 19 of the Procedures, as well as the aggravating and mitigating factors set out in *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998), Judge Lineberger recommended the sanction of disbarment. The judge's findings, conclusions, and recommendation were filed with the clerk of this court on July 1, 2008, pursuant to section 13(D) of the Procedures. Both Walker and Ligon have submitted briefs according to section 13(D), and the matter is now before this court for resolution.

Section 1(C) of the Procedures provides that disciplinary proceedings are neither civil nor criminal in nature but are sui generis, meaning of their own kind. *See Ligon v. Dunklin*, 368 Ark. 443, 247 S.W.3d 498 (2007); *Ligon v. Newman*, 365 Ark. 510, 231 S.W.3d 662 (2006); *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). The special judge's findings of fact are accepted by this court unless they are clearly erroneous. *Dunklin, supra; Ligon v. Price*, 360 Ark. 98, 200 S.W.3d 417 (2004). This court imposes the appropriate sanction as warranted by the evidence. *Newman, supra; Price, supra.* There is no appeal from this court except as may be available under federal law. *Newman, supra; Price, supra.*

In this particular case, Walker does not challenge or contest the special judge's findings of fact. Rather, he raises legal arguments concerning three separate matters: 1) the judge's denial of his motions to strike the amended petitions for disbarment; 2) the denial of his motion for continuance; and 3) the judge's consideration of the testimony offered by Dr. Sarah Cearley, one of Walker's witnesses.

In his first argument to this court, Walker argues that, under the procedural rules of the Supreme Court Committee on Professional Conduct, the Executive Director does not have the authority to amend a petition for disbarment and bring further charges in a disbarment proceeding without first resorting to a vote of the Committee. Walker contends that Ligon's repeated amendments to the disbarment petition were improper and ultra vires because there is "no provision in [the Procedures] for amendment absent action of the Committee." He further asserts that the special judge erred in applying "the rule of freely allowing amendments that is utilized in civil cases under the Arkansas Rules of Civil Procedure,"[3] and that the Executive

3. Rule 15(a) of the Arkansas Rules of Civil Procedure governs the amendment of pleadings and provides as follows:

With the exception of pleading the defenses mentioned in Rule 12(h)(1), a party may amend his pleadings at any time with-

Director "cannot simply amend the pleadings without input from the Committee."

Ligon responds that, once a disbarment proceeding is filed in the supreme court, it is no longer before the Committee, and the Rules of Civil Procedure apply. *See* Procedures § 13(A). He also maintains that, but for the amended petitions, Walker could be facing four separate disbarment actions, and therefore, the filing of the amended petitions "invokes common sense and efficient use of judicial resources."

Section 13 of the Procedures sets out the process for a disbarment action, stating in relevant part as follows:

(A) An action for disbarment shall be filed as an original action with the Clerk of the Supreme Court. Upon such filing, the Arkansas Supreme Court, pursuant to Amendment 28 of the Arkansas Constitution, shall assign a special judge to preside over the disbarment proceedings. . . . In disbarment suits, the action shall proceed as an action between the Executive Director and the respondent. Proceedings shall be held in compliance with the Arkansas Rules of Civil Procedure and the Arkansas Rules of Evidence, and trial shall be had without a jury.

(B) The judge shall first hear all evidence relevant to the alleged misconduct and shall then make a determination as to whether the allegations have been proven. Upon a finding of misconduct, the judge shall then hear all evidence relevant to an appropriate sanction to be imposed, including evidence related to the factors listed in Section 19 and the aggravating and mitigating factors set out in the American Bar Association's Model Standards for Imposing Lawyer Sanctions, §§ 9.22 and 9.32 (1992). *See Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998).

(C) The judge shall make findings of fact and conclusions of law with respect to the alleged misconduct of the respondent attorney and the imposition of sanctions, including the factors discussed in subsection 13(B). . . . The judge shall make a recommendation as to the appropriate sanction from those set out in Section 17(D).

(D) The findings of fact, conclusions of law, and recommendation of an appropriate sanction shall be filed with the Clerk of the Supreme Court along with a transcript and the record of the proceedings. Upon the filing, the parties shall file briefs as in other cases. The findings of fact shall be accepted by the Supreme Court unless clearly erroneous. The Supreme Court shall impose the appropriate sanction, if any, as the evidence may warrant. In imposing the sanction of suspension, the attorney may be suspended for a period not exceeding five (5) years. There is no appeal from the decision of the Supreme Court except as may be available under federal law.

With regard to Walker's first point concerning the amendment of a disbarment petition, we addressed a somewhat similar issue in *Ligon v. Price*, 360 Ark. 98, 200 S.W.3d 417 (2004). *Price* was a disbarment action brought under the cur-

out leave of the court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 20 days after service of the amended pleading, whichever period is longer, unless the court otherwise orders.

rent version of section 13.[4] After a panel of the Committee voted to initiate disbarment proceedings against attorney Price, this court appointed a special judge who conducted the trial and recommended disbarment. *Price*, 360 Ark. at 104–05, 200 S.W.3d at 421–22. During the trial, various witnesses testified about matters that had not been set out in the petition for disbarment, and at the end of the trial, the Executive Director attempted to amend the petition to conform to the proof that had been placed in the record. *See* Ark. R. Civ. P. 15(b). The special judge refused the request. *Id.* at 119, 200 S.W.3d at 430.

Upon review of the special judge's recommendation, this court agreed that the Executive Director's strategy had been improper, noting that an attorney must be given fair notice of the charges to be brought against him in order to achieve due process. *Id.* This court pointed out that there had been "sufficient time for [the Executive Director] to amend the petition for disbarment to include the information provided by these [new] witnesses." *Id.* In addition, the court held that "matters used at trial and not included in the petition for disbarment are not to be allowed in that particular disbarment proceeding *unless the pleadings are amended and notice given to [the] respondent attorney.*" *Id.* at 120, 200 S.W.3d at 431 (emphasis added); *see also Ligon v. Dunklin*, 368 Ark. at 457, 247 S.W.3d at 509 (holding that the special judge did not

abuse his discretion in refusing to admit certain exhibits as Rule 404(b) evidence at attorney Dunklin's disbarment proceedings where Dunklin had not been given notice that the Committee planned to introduce the evidence at the hearing).

While the *Price* court did not explicitly hold that the proper procedure for incorporating new material into a petition for disbarment is by filing amended petitions in accordance with Ark. R. Civ. P. 15(a), we do so now. The application of the Rules of Civil Procedure to disbarment proceedings is set forth plainly in section 13(A) of the Procedures.[5] In addition, section 17.E(1) of the Procedures provides that "[t]he Committee's written notice to institute a disbarment proceeding need not state specific findings as to the misconduct or Model Rule violations." As a consequence, Walker's contention that a Committee vote or other action is necessary to add new counts or allegations to the petition is unavailing. We therefore hold that the amendment of disbarment petitions is governed by Rule 15(a).

This court has held that it is "essential that an attorney be given fair notice in a disciplinary proceeding of the charges to be brought against him in order to achieve due process." *Price*, 360 Ark. at 119, 200 S.W.3d at 430. Application of Rule 15(a) will allow the Executive Director to amend a petition to raise new matters, while still affording the accused attorney with sufficient notice of the new allegations against

---

4. The Procedures were revised as of January of 2002. *See In re Amendments to the Procedures Regulating Professional Conduct of Attorneys at Law*, 345 Ark. App'x 675 (2001) (per curiam).

5. Citing section 7(E) of the Procedures, Walker asserts that the Rules of Civil Procedure do not apply to disbarment proceedings. He is wrong. Section 7(E) provides that, "[e]xcept as noted in these Procedures, the Arkansas

Rules of Evidence and the Arkansas Rules of Civil Procedure shall not generally apply to discipline proceedings." (Emphasis added.) As noted above, section 13(A) specifically provides that the Rules of Civil Procedure are applicable in disbarment proceedings. As such, there is no procedural or rule-based impediment to applying Ark. R. Civ. P. 15 to disbarment actions.

him or her, thereby protecting the attorney's due process rights.

■ We note, however, that the amendments must be filed in a timely fashion, and the decision whether to permit the amended pleadings must be committed to the discretion of the special judge. *See, e.g., Stephens v. Petrino,* 350 Ark. 268, 86 S.W.3d 836 (2002) (Rule 15(a) vests broad discretion in the trial court and the exercise of that discretion will be sustained unless it is manifestly abused). In this case, Walker does not argue that the special judge's denial of his motions to strike the amended pleadings constituted an abuse of discretion. Accordingly, we conclude that the special judge properly denied Walker's motions.

■ In his second argument before this court, Walker contends that the special judge's order denying his February 5, 2008, motion for continuance violated his due process rights and prejudiced him by depriving him of adequate time to mount a defense to the allegations raised in the fourth amended petition. We review the denial of a motion for continuance under an abuse-of-discretion standard. *See Sims v. Moser,* 373 Ark. 491, 284 S.W.3d 505 (2008); *Jacobs v. Yates,* 342 Ark. 243, 27 S.W.3d 734 (2000). An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion but also must show prejudice that amounts to a denial of justice. *See Sims, supra.* When a motion to continue is based on a lack of time to prepare, we will consider the totality of the circumstances. *See Navarro v. State,* 371 Ark. 179, 264 S.W.3d 530 (2007).

In this case, the fourth amended petition raised allegations that Walker had failed to file federal or state income tax returns or pay federal and state income taxes for the years 2002 through 2006. Ligon had been attempting to obtain Walker's tax records since at least July 27, 2007, when he filed a "Second Motion to Produce Documents" that specifically asked Walker to produce "any and all" federal and state tax returns filed between 2002 and 2006 by Walker personally or as a business entity. Although Walker objected to providing his tax returns, the special judge granted Ligon's motion and entered an order on November 19, 2007, directing Walker to provide the documents by December 19, 2007.

At a pretrial hearing on January 8, 2008, Walker acknowledged that he had not produced his tax returns and provided them to Ligon. In an order entered on January 16, 2008, the special judge specifically ordered Walker to produce the tax returns by 5:00 p.m. on January 18, 2008. On January 17, 2008, Walker submitted a hand-written affidavit in which he stated that he had made "appropriate inquiry" with the Internal Revenue Service and had been informed that he had not filed any income tax returns for the years in question. The next day, January 18, 2008, Ligon filed the fourth amended petition for disbarment that incorporated Walker's failure to file income taxes as a basis for seeking disbarment.

Walker moved for a continuance on February 5, 2008, arguing that the filing of the fourth amended petition left him without sufficient time to prepare for trial. He further asserted that the new allegations that he had willfully failed to file income tax returns required him to "invest substantial time, money, and other sources in developing a defense." Ligon responded on February 7, 2008, retorting that Walker had failed to abide by the special judge's orders to produce the requested documentation, so that any delay in the filing of the amended petition was Walker's own fault. In addition, Ligon noted that Walker had admitted not filing income taxes for the years in question and that Walker should

have known that he had not filed them for those years. Ligon suggested that Walker could file a general denial to the fourth amended petition and "put [Ligon] to the 'proof' test."

While the special judge did not enter an order that specifically denied Walker's motion for continuance, the judge did enter an order on February 19, 2008, denying his motion to strike the fourth amended complaint. In that order, the judge found that Walker's failure to timely provide his income tax returns was the "principal cause of his shortened time for trial preparation." The judge noted that Walker's defense was based on his mental health issues, a defense that he had had adequate time to prepare, and the late filing of the fourth amended complaint had not prejudiced his ability to fairly and adequately prepare that defense. The matter went to trial beginning on February 19.

In his arguments before this court, Walker contends that the special judge abused his discretion in denying the continuance. In support, Walker cites *Butler v. State*, 339 Ark. 429, 5 S.W.3d 466 (1999), in which this court reversed and remanded a case in which the circuit court denied a continuance. In *Butler*, the defendant obtained new counsel less than a month before his rape trial. The new attorneys moved for a continuance, arguing that they could not be sufficiently prepared for trial in such a short time; their difficulty in preparing was due in part to the fact that the State had not included the names of the alleged victims in the information, and did not divulge the victims' identities until the day that the trial started. The circuit court denied the continuance, and this court reversed, holding that it was an abuse of discretion not to give Butler's new attorneys time to prepare, especially when counsel had not been provided full discovery of the names of the victims until

the day of trial. *Butler*, 339 Ark. at 433, 5 S.W.3d at 468.

*Butler* is easily distinguishable. There, the continuance was requested because the prosecution had been dilatory in providing information that was necessary to the defense. Here, on the other hand, Walker himself was responsible for the delay. Had Walker promptly complied with Ligon's request for production of documents and provided the information about his failure to file income taxes in a timely manner, the fourth amended petition would likely have been filed well in advance of the trial.

In reviewing the denial of motions for continuance based upon alleged inadequacy of time for preparation for trial by a defendant's attorney, this court has been "hesitant about finding an abuse of discretion because of the superiority of the trial judge's perspective, his grasp of the particular situation, and his knowledge of developments which are not matters of record." *Gomez v. State*, 305 Ark. 496, 499, 809 S.W.2d 809, 812 (1991) (citing *Swaim v. State*, 257 Ark. 166, 514 S.W.2d 706 (1974)). Here, given the special judge's unique perspective on and familiarity with the disbarment proceedings, we cannot say that he abused his discretion in denying Walker's motion for continuance.

Walker's third argument before this court challenges the special judge's consideration of one of Walker's witnesses. At the disbarment trial, Walker called Dr. Sarah Cearley, the director of client services at the Arkansas Lawyers Assistance Program ("ArLAP"), to testify regarding her interactions with him. Dr. Cearley, a licensed clinical social worker with a Ph.D. in social work, testified that Walker had been referred to ArLAP by his attorney in April of 2007. She said that she talked to Walker about a diagnosis of adjustment disorder. However, she

also acknowledged that she was not a medical doctor or psychologist. She further conceded that, if willfulness were an element of the matters with which Walker had been charged, she would not be able to diagnose or address "the issue of the willfulness of Walker's conduct in a certain specific situation." In addition, she stated that she had never intended to suggest that Walker's adjustment disorder "was causative in any way."

While Dr. Cearley was on the stand, the special judge commented that he was accepting her testimony for mitigation and would "consider it for that purpose for whatever we may do." The judge questioned, however, whether her testimony could be considered insofar as it was pertinent to a defense.

In his findings of fact and conclusions of law, the special judge concluded that Dr. Cearley was a knowledgeable social worker, but she was "called upon to give opinions and diagnoses which were beyond her level of education, training, experience, and overall qualifications." The judge also stated that she did "not qualify as a medical expert, and her testimony has not been given the degree of reliability as that normally given experts." The judge also noted that he had been unable to find "any credible evidence reflecting that Walker's alleged disability caused any of his ethical misconduct," nor had he found any case law in which medical disability testimony had been admitted as a defense to an ethics charge. The judge concluded that Walker's alleged disability did not constitute a defense to any of the charges of ethical violations.

In his brief to this court, Walker argues that, by giving "little or no weight" to Dr. Cearley's testimony, the judge did not consider the full range of possible punishments. Had the judge "properly" considered her testimony, Walker urges, the court might have applied the "lesser sanction of temporary inactive status to this case." He contends that Dr. Cearley's testimony should have been considered both as a potential defense "for the actions of an otherwise exemplary attorney" and also as mitigating evidence to blunt the "harshness of disbarment."

Ligon responds with several points. First, he argues that neither Walker nor the special judge found a case in which medical disability testimony had been admitted as a defense to an ethics charge. Second, he asserts that Dr. Cearley was not qualified to testify as an expert witness as to Walker's mental state. And finally, Ligon notes that the special judge allowed Dr. Cearley's testimony insofar as it went to mitigation.

We conclude that the special judge gave proper consideration to Dr. Cearley's testimony. As noted above, the Arkansas Rules of Evidence apply in disbarment proceedings, and a special judge has the discretion to accept a witness's testimony and afford that testimony whatever weight the judge deems appropriate. *See, e.g., Neal v. Hollingsworth,* 338 Ark. 251, 992 S.W.2d 771 (1999) (disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder). The judge acknowledged that Dr. Cearley's testimony would be admitted for purposes of proving mitigation, and indeed, in the judge's order, he noted that the mitigating factor of "personal or emotional problems" applied to Walker's case.

Although Walker argues that the special judge should have considered Dr. Cearley's testimony as evidence of a defense to the disbarment proceeding, we note that the purpose of disciplinary actions is to protect the public and the administration of justice from lawyers who have not discharged their professional

duties to clients, the public, the legal system, and the legal profession. *See Ligon v. Dunklin,* 368 Ark. at 448, 247 S.W.3d at 503. Moreover, in the present case, Dr. Cearley was not qualified as an expert witness, and she acknowledged that she was not a medical doctor or psychologist. As such, she did not offer any medical proof of Walker's mental status. *See Price,* 360 Ark. at 117, 200 S.W.3d at 428 (special judge did not err in its consideration of mitigating factors when attorney offered no medical evidence of his mental or physical conditions). Dr. Cearley also testified that she could not state that Walker's mental health issues were "causative" in any way of Walker's actions. Therefore, even if, as Walker argues, a mental disorder could serve as a defense to a disbarment proceeding, Walker's proof fell short of establishing such a defense.

■ On a final note, we must address a matter raised in Walker's reply brief. Walker contends that the brief submitted by Ligon shows a "clear personal bias" and is "replete with sarcasm and vituperation masquerading as legal argument." Although we do not find any impermissible bias in this case, we agree with Walker that the Executive Director's brief is unprofessional in tone and improper in some of its content. Ligon's brief contains unnecessarily sarcastic remarks and, at one point, invites the court to look outside of the record to examine matters that were not before the special judge. This is improper argument.

■ In conclusion, Walker was found to have violated numerous Model Rules of Professional Conduct, and he does not challenge the special judge's factual findings in this regard. Included among those violations were the conversion of client funds, failing to maintain his trust account records, and continuing to practice law after his license had been suspended. Each of these constitutes serious misconduct, as that term is defined in the procedures. *See* section 17(B)(1) & (3) (misconduct will be considered serious if it involves the misappropriation of funds or dishonesty, deceit, fraud, or misrepresentation by the lawyer); *Ligon v. Stewart,* 369 Ark. at 390–92, 255 S.W.3d at 442–44 (conviction of a felony DWI and continuing to practice law without a license constituted serious misconduct that was "more than sufficient ... to support the ... petition for disbarment").

As noted above, the purpose of disciplinary actions is to protect the public and the administration of justice from lawyers who have not discharged their professional duties to clients, the public, the legal system, and the legal profession. *See Ligon v. Dunklin,* 368 Ark. at 448, 247 S.W.3d at 503. Here, after applying the relevant section 19 sanction factors and the relevant aggravating and mitigating factors, the special judge determined that disbarment was the appropriate sanction. We agree with the special judge and enter an order of disbarment.